**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL ACTION NO.  5:14-CV-034-RLV-DCK**

| | |
|---|---|
| **LEO O. SINGER, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | )    <u>**MEMORANDUM AND**</u> |
| **v.** | )    <u>**RECOMMENDATION**</u> |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 12) and "Defendant's Motion For Summary Judgment" (Document No. 14).  This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B).  After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>;  that "Defendant's Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I.    BACKGROUND

Plaintiff Leo O. Singer Jr. ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits.  (Document No. 1). On or about May 11, 2009, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning April 6, 2006.  (Transcript of the Record of Proceedings ("Tr.") 14, 320, 324).  The Commissioner of Social Security (the

"Commissioner" or "Defendant") denied Plaintiff's application initially on September 24, 2009, and again after reconsideration on January 14, 2010. (Tr. 136-140, 144-151). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We realize that your condition keeps you from doing some types of work, but it does not keep you from doing less demanding work. Based on your age, education, and past work experience, you can do other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 148).

Plaintiff filed a timely written request for a hearing on January 28, 2010. (Tr. 159). On May 4, 2011, Plaintiff appeared and testified at a hearing before Administrative Law Judge Joseph E. Brezina. (Tr. 26-54). In addition, Samuel Furgiuele, Plaintiff's attorney, appeared at the hearing. Id. The ALJ issued an unfavorable decision on August 16, 2011, denying Plaintiff's claim. (Tr. 116-127).

Plaintiff filed a request for review of the ALJ's decision on September 19, 2011, which was granted by the Appeals Council on March 19, 2012. (Tr. 200, 132-134). The "Order Of Appeals Council" issued on March 19, 2012, vacated the ALJ's August 16, 2011 decision, and remanded this case for further proceedings so an Administrative Law Judge could: obtain testimony/evidence from a vocational expert regarding Plaintiff's ability to perform work in the national and local economy; obtain additional evidence concerning Plaintiff's medical condition; and give further consideration to Plaintiff's maximum residual functional capacity. (Tr. 133-134).

On October 10, 2012, Plaintiff appeared and testified again at a hearing before Administrative Law Judge Joseph E. Brezina ("ALJ").  (Tr. 14-24, 55-108, 249).  In addition, Andrew V. Beale, a vocational expert ("VE") testified via telephone at the hearing and Samuel Furgiuele, Plaintiff's attorney, appeared at the hearing.  Id.  At the supplemental hearing, Plaintiff, on the advice of his attorney, amended his alleged onset date of disability from April 6, 2006 to February 18, 2009.  (Tr. 14).

The ALJ issued a second unfavorable decision on November 19, 2012, denying Plaintiff's claim.  (Tr. 11-24).  In the second decision, the ALJ noted that he was incorporating his previous presentation of the objective medical evidence "into this decision, **by reference**, as though it were set forth in its entirety herein."  (Tr. 19).

Plaintiff filed a request for review of the ALJ's second decision on or about January 7, 2013, which was denied by the Appeals Council on January 27, 2014.  (Tr. 1-4, 10).  The November 19, 2012 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request.  (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on March 23, 2014.  (Document No. 1).  On August 1, 2014, the undersigned was assigned to this case as the referral magistrate judge.

Plaintiff's "Motion For Summary Judgment" (Document No. 12) and "Memorandum In Support Of Plaintiff's Motion For Summary Judgment" (Document No. 12-1) were filed September 26, 2014;  and "Defendant's Motion For Summary Judgment" (Document No. 14) and "Memorandum In Support Of The Commissioner's Motion For Summary Judgment" (Document No. 15) were filed November 28, 2014.

Pursuant to the Court's "Order" (Document No. 16), the parties filed a "Joint Status Report" (Document No. 18) on June 3, 2015. The "Joint Status Report" provides that the parties agree that the ruling in <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015) is implicated by this case, and that they will file supplemental briefs. (Document No. 18).

Plaintiff's "Supplemental Memorandum In Support Of Plaintiff's Motion For Summary Judgment" (Document No. 19) was filed on June 11, 2015, and "Defendant's Supplemental Memorandum In Support Of The Commissioner's Motion For Summary Judgment" (Document No. 21) was filed on June 12, 2015.

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard L. Voorhees is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. <u>Hays</u>, 907 F.2d at 1456 (4th Cir. 1990); <u>see also</u>, <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986); <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between February 18, 2009, and Plaintiff's date last insured, June 30, 2010.[1]  (Tr. 14).  To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1)     whether claimant is engaged in substantial gainful activity -
        if yes, not disabled;

---

[1]  Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

(2)     whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3)     whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4)     whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled;  and

(5)     whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps;  if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy.  Pass, 65 F.3d at 1203.  In this case, the ALJ determined at the fifth step that Plaintiff was not disabled.  (Tr. 23-24).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since February 18, 2009, his revised alleged disability onset date.  (Tr. 14, 16).  At the second step, the ALJ found that Osteoarthrosis and Allied Disorders;  Subjective Complaints of Migraine Headaches;  Obesity (The Claimant is 75 inches tall and weighs 251 pounds with a BMI of 32); Affective/Mood Disorders;  and Anxiety Disorders, were severe impairments.[2]  (Tr. 16).  At the

---

[2]  The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage.  See Bowen v. Yuckert, 482 U.S. 137 (1987).

third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 17).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform a wide range of unskilled medium work activity, with the following limitations:

> The Claimant can stand and walk for 6 hours (with normal breaks) in an 8-hour workday; he can sit for 6 hours (with normal breaks) in an 8-hour workday; he can lift and carry, and push and pull, 50 pounds occasionally and 25 pounds frequently (from very little, up to 1/3 of an 8-hour workday); he can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with reaching and handling; and the claimant can perform frequent, but not constant, overhead reaching with his right upper extremity; he has no such restrictions with his left upper extremity; he can perform each of the following postural activities occasionally; stooping and crouching with no additional postural limitations noted. Based solely on the claimant's subjective complaints, he should avoid concentrated exposure to unprotected heights, moving machinery, environmental pollutants, and poor ventilation. As for the claimant's remaining mental capacity, the claimant is limited to performing unskilled, simple, routine, repetitive tasks, which requires only one, two, or three step instructions.

(Tr. 18). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." (Tr. 19).

At the fourth step, the ALJ held that Plaintiff could not perform his past relevant work as a telemarketing surveyor. (Tr. 23). The ALJ noted that Plaintiff's past relevant work was semi-skilled in nature, and that due to his remaining residual functional capacity limitations, he would be unable to perform such work. Id.

At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 23-24). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included Self Service Laundromat Attendant; Laundry Checker; and Assembler. (Tr. 24). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time from February 18, 2009, through the date of his decision, November 19, 2012. (Tr. 15, 24).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ erred in finding no limitations relating to Plaintiff's severe headaches; (2) the ALJ erred at step three of the sequential evaluation process by finding that Plaintiff did not meet Listing 12.05(C); (3) ALJ's determination of Plaintiff's residual functional capacity is not supported by substantial evidence; and (4) the ALJ erred in treating his own prior vacated decision as evidence. (Document No. 12-1, p.4). In addition, Plaintiff asserts that remand is required by Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). (Document No. 19).

The undersigned will discuss each of these contentions in turn.

**A.     Headaches**

In his first assignment of error, Plaintiff argues that the ALJ found that one of Plaintiff's "severe" impairments was his "complaints of migraine headaches," but the ALJ failed to explain or consider the impact of Plaintiff's headaches. (Document No. 12-1, p.5). According to Plaintiff, "[t]his is inadequate to discharge his responsibility to explain his decision, and it did not adequately consider the impact of headaches, which were documented in the record long before his application for disability." (Document No. 12-1, p.5) Moreover, "20 C.F.R. §404.953 requires

an ALJ to issue a written decision which gives findings of fact and the reasons for the decision, based upon the preponderance of the evidence offered at the hearing or otherwise included in the record." Id.

Plaintiff asserts that in his first decision, the ALJ "discounted the headaches because 'there were no neurological abnormalities noted' though he noted that Mr. Singer was referred to a Dr. Lewis for them." (Document No. 12-1, p.5) (citing Tr. 121-22). Plaintiff further notes that in the current decision, "the ALJ devoted three sentences to the headaches complaint, saying that he was treated for his 'subjective complaints of headaches on a very sporadic basis with Tramadol,' that 'a CAT scan of his brain on March 10, 2010 was unremarkable' and that on August 2, 2011, he said he 'was 'doing well' with his medications.'" Id. (citing Tr. 20).

Plaintiff states that the complaints of headaches "have particular importance to his claim." (Document No. 12-1, p.5). Plaintiff then references his own counsel's hypothetical to the VE, relying on "Mr. Singer's testimony," and suggesting Plaintiff would need to be "off task two or more periods each workday for unscheduled breaks lasting between 15 minutes and 45 minutes each" (Document No. 12-1, pp.5-6) (quoting Tr. 106). The VE opined that such breaks "would severely compromise competitive employment." See (Document No. 12-1, pp.5) and (Tr. 106).

Plaintiff acknowledges that headaches and pain are subjective by nature, but asserts that the record shows long-term, consistent complaints by Plaintiff pre-dating his claim. (Document No. 12-1, pp.7-8). Plaintiff then concludes that the ALJ erred by recognizing Plaintiff's headache complaints as a severe impairment, but ignoring their impact. (Document No. 12-1, p.8).

In response, Defendant asserts that "Plaintiff suggests that the ALJ should have accepted Plaintiff's testimony regarding the severity and frequency of his headaches at face value and should have included a limitation that Plaintiff would require two or more unscheduled breaks

every workday, between 15 and 45 minutes each, which would have resulted in a finding of disability." (Document No. 15, pp.4-5) (citing Document No. 12-1, pp.5–6 and Tr. 43–46, 80, 82–84, 106). " However, the ALJ properly considered both the medical evidence related to Plaintiff's complaints of headaches and the credibility of his subjective complaints, properly concluding that Plaintiff's allegations as to the intensity, persistence, and limiting effects of his symptoms were not fully credible in light of the evidence." (Document No. 15, pp.4-5) (citing Tr. 19-22).

Next, Defendant provides a thorough summary of both the ALJ's process for considering a claimant's statements regarding limitations caused by impairments, and the evidence of record regarding Plaintiff's headaches. See (Document No. 15, pp.5-9). Defendant then contends that the ALJ "considered the foregoing evidence of complaints and treatments for headaches, noting in particular the normal CT finding, Plaintiff's treatment with tramadol, and [a] report in April 2011 that he was 'doing well' with his medications." (Document No. 15, p.9) (citing Tr. 19-20). Defendant also notes that the "ALJ also considered the treatment records related to headaches in more detail in the August 2011 decision (Tr. 121-22), which the ALJ incorporated by reference in the present decision." (Document No. 15, p.9, n.5) (citing Tr. 19). Defendant further notes that the "ALJ also considered Plaintiff's allegations of pain and functional limitations under the two-step process as set forth in the regulations, 20 C.F.R. §§ 404.1529, 416.929, and determined they were not fully credible." (Document No. 15, p.9) (citing Tr. 19-21); see also (Tr. 20-21, 533, 794, and 830).

Defendant observes that the ALJ noted that Plaintiff "had difficulties with the overuse of his pain medication" and one of his physicians reported that he was "exhibiting drug-seeking behavior." Id. (citing Tr. 19, 21)(citing Tr. 789-803). Defendant argues that the ALJ considered

the evidence and gave good reasons, supported by the evidence, for not finding Plaintiff's allegations fully credible, "such as the lack of treatment from specialists, overuse of pain medication, and evidence of drug-seeking behavior." (Document No. 15, p.10). Moreover, Defendant contends that contrary to Plaintiff's assertions, the ALJ did include restrictions in the RFC related to Plaintiff's subjective complaints. Id. Specifically, Defendant suggests that the ALJ's restriction regarding exposure to workplace hazards was appropriate for an individual taking prescription pain medication. Id. (citing Tr. 18).

In conclusion, Defendant contends that the treatment notes make clear that Plaintiff's treatment providers considered his headaches to be tension headaches, not "migraine headaches," and that the treatment notes suggest his headaches were not as debilitating as alleged. (Document No. 15, p.11) (citing Tr. 794, 838).

It appears to the undersigned that the ALJ's consideration of Plaintiff's headaches was adequate, and supported by substantial evidence. The ALJ determined that Plaintiff's subjective complaints of headaches established a severe impairment, and in both decisions the ALJ discussed evidence and testimony regarding Plaintiff's headaches. Moreover, it is unclear what additional limitation(s) Plaintiff contends are necessary to adequately address the impact of Plaintiff's headaches.

**B.      Mental Capacity**

Next, Plaintiff argues that the ALJ's decision that Plaintiff does not meet Listing 12.05 (C) is not supported by substantial evidence, and that the ALJ's decision regarding Plaintiff's mental capacity was improperly affected by personal bias. (Document No. 12-1, pp.8-21). Plaintiff contends "that he met the requirements of Rule 12.05(C) of the Social Security Administration's 'Listings of Impairments,' 20 C.F.R. Part 404, Subpart P, Appendix 1, those

medical conditions which presumptively establish disability without reference to vocational or other factors." (Document No. 12-1, p.8) (citing Tr. 61-67, 429, 440, 459). Plaintiff notes that Rule 12.05 provides, in relevant part:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> C.     A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . ."

(Document No. 12-1, p.8) (quoting 20 C.F.R. Part 404, Subpt. P, App. 1, § 12:05).[3]

Plaintiff then acknowledges that "the ALJ directly addressed this contention" in his decision. Id. (citing Tr. 17). Moreover, Plaintiff recognizes that the ALJ specifically "cited the full-scale IQ score of 72 which had resulted from recent IQ testing." Id. See also (Tr. 17) (citing Tr. 652 and 807).

Plaintiff suggests, however, that the ALJ erred in his assessment of mental capacity: by failing to mention "the sub-test results;" by failing to rely on substantial evidence in finding that Plaintiff did not have significant deficits in adaptive functioning; and/or by being affected by a personal bias. (Document No. 12-1, pp.8-9).

**1.   Bias**

Plaintiff contends that the ALJ made comments during the most recent hearing that "demonstrated a bias toward people who have suffered from drug and alcohol problems" and "assailed the reliability of the testing." (Document No. 12-1, p.10). Specifically, the ALJ opined

---

[3] As noted by Defendant, the Social Security Administration has changed the terminology in the regulations from "mental retardation" to "intellectual disability." (Document No. 15, p.12, n.6).

during the hearing that he "had numerous medical experts testify at various hearings that anybody can go in and just not participate completely in the examination, and they can artificially decrease their IQ scores. That's why it's so subjective." (Document No. 12-1, p.9; Tr. 64). The ALJ also suggested that reading tests were similarly subjective. Id.

In addition, Plaintiff observes that the ALJ also stated during the hearing that Plaintiff was "not the most sympathetic claimant" based on an "extremely poor past work history." (Document No. 12-1, pp.9-10; Tr. 67). Plaintiff, however, fails to acknowledge that during that same discussion about earnings, past drug addiction and alcohol abuse, and credibility, Plaintiff's counsel responded to the ALJ's comments by saying "I really don't disagree with anything you've said, Your Honor," and "Sure." (Tr. 66-67).

Plaintiff notes that this Court recently considered and rejected a claim of ALJ bias. (Document No. 12-1, p.10) (citing Kasin v. Colvin, 3:13-CV-532-RJC, 2014 WL 3729809 (W.D.N.C. July 28, 2014). As cited by Plaintiff, the Court found that a claimant's failure to pay taxes and conviction for embezzlement were permissible bases for questioning credibility, and that there was no evidence to suggest such considerations affected the ALJ's consideration of the medical evidence. Id. See also Kasin, 2014 WL 3729809, at *6. Plaintiff contends that Kasin is distinguishable from the instant case and that the ALJ's comments referenced above show that the ALJ here impermissibly relied on information outside the record in reaching his decision. Id.

In response, Defendant suggests that the ALJ's comments at the hearing indicate skepticism regarding Plaintiff's arguments – not bias. (Document No. 15, p.16). Defendant then argues that the ALJ accepted the results of the IQ testing and even cited them as a reason for including mental limitations in the RFC. Id. (citing Tr. 18, 22). Defendant concludes that the accusations of bias and reliance on information outside the record are unfounded and irrelevant

because they have nothing to do with the ALJ's actual and explicitly-stated reason for finding that Plaintiff did not meet Listing 12.05. Id.

The undersigned is not persuaded that Plaintiff's claims of bias support a finding of error.

**2. Verbal Comprehension Subtest**

Plaintiff asserts that the ALJ "wrongfully ignored" his verbal comprehension subtest score of 70, "which brought Mr. Singer into the range contemplated by Listing 12.05(C)." (Document No. 12-1, p.11). Plaintiff contends although the ALJ rejected a finding that Plaintiff met the Listing because he "had no 'significant deficits in adaptive functioning,'" his failure to note the lower verbal comprehension score was error. (Document No. 12-1, pp.11-12) (quoting Tr. 17).

Defendant effectively counters that Plaintiff is relying on a verbal IQ score of 70 on testing from November 2010, when Plaintiff was 48 years old, as evidence of Plaintiff's IQ when he was 22 years old. (Document No. 15, p.15) (citing Tr. 806-807).[4] Defendant notes that the only direct evidence from before Plaintiff reached age 22 appears to show an IQ score of 75. Id. (citing Tr. 421).

Defendant then asserts that the IQ score of 75 would tend to show that Plaintiff did not have "significantly subaverage general intellectual functioning" before age 22. Id. (citing Caldwell v. Astrue, 1:09-CV-233-MR, 2011 WL 4945959, at *2 (W.D.N.C. Oct. 18, 2011). "In fact, the examiner who tested Plaintiff's IQ in November [2010] noted that Plaintiff's IQ placed him in the borderline range, and *did not* diagnose either mental retardation or intellectual disability, but rather borderline intelligence." Id. (citing Tr. 807). Defendant concludes that

---

[4] Neither side notes all Plaintiff's scores: Full Scale – 72; Verbal Comprehension – 70; Perceptual Reasoning – 81; Working Memory – 83; and Processing Speed – 76. See (Tr. 807).

even if the ALJ erred by failing to mention the verbal IQ score of 70, such error is harmless because the ALJ ultimately found that Plaintiff did not meet a Listing because he had not shown deficits in adaptive functioning -- a separate, required element of Listing 12.05. (Document No. 15, pp.15-16)

The undersigned agrees with Defendant on this point. The undersigned also observes that the ALJ's decision cited to the evidence of record regarding Plaintiff's IQ test results from November 2010 multiple times. <u>See</u> (Tr. 17-18) (citing Tr. 807).

### 3. Adaptive Functioning

While noting the intelligence testing performed by Dr. Padgett in November 2010, the ALJ opined that the "totality of the additional evidence of record . . . shows that the claimant does not have significant deficits in adaptive functioning." (Tr. 17).

Plaintiff now contends that the ALJ "ignored the evidence which did not fit his conclusion." (Document No. 12-1, p.12). Plaintiff acknowledges specific evidence cited by the ALJ regarding Plaintiff's household, personal care and other activities, but argues that the ALJ ignored other observations in those same reports. (Document No. 12-1, pp.12-21). Plaintiff goes on to argue that other evidence, including poor academic performance, poor work history, and chronic homelessness, shows deficits in adaptive functioning. Id.

In response, Defendant first notes that "[i]t was Plaintiff's burden to prove that his impairment met or medically equaled all of the criteria of Listing 12.05C." (Document No. 15, p.12) (citing <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530–31 (1990)). " To satisfy the requirements of Listing 12.05C, a claimant must first meet the general "diagnostic description" for intellectual disability found in the introductory language of Listing 12.05 by proving the presence of "significantly subaverage general intellectual functioning with deficits in adaptive functioning

initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Id.

Defendant contends that the ALJ made a proper determination because:

> Plaintiff's full range of daily activities ("including cooking, cleaning, laundry, socializing with his girlfriend, attending church, looking for work, riding a moped, and playing billiards"), his ability to live independently, lack of evidence of "any markedly severe dysfunctional social behavior", the "totality of the evidence, including the independent mental evaluations performed in 2009 and again in 2010," and Plaintiff's semi-skilled past relevant work all demonstrated that Plaintiff did not have significant deficits in adaptive functioning (Tr. 17). These are all valid reasons for the ALJ to conclude that Plaintiff did not meet this criteria of Listing 12.05. *See Hancock*, 667 F.3d at 476 (affirming an ALJ's finding of no deficits in adaptive functioning due the claimant's past semi-skilled jobs, daily activities, and school attendance)*; Caldwell*, 2011 WL 4945959, at *3 (finding substantial evidence to support finding of no deficits in adaptive functioning where plaintiff demonstrated "good communication, self-care home care skills, and social/interpersonal skills"). Accordingly, substantial evidence supports the ALJ's determination that Plaintiff's mental condition did not meet Listing 12.05, regardless of his IQ scores and other severe physical and mental impairments required to meet subparagraph C of the listing.

Document No. 15, p.13).

Plaintiff further asserts that there could be many other explanations for Plaintiff's poor academic performance and other difficulties, including his history of drug and alcohol abuse. Id. (citing Tr. 328-30, 652, 698-728, 730-46, 806-07).

Based on the foregoing, the undersigned is not persuaded that the ALJ erred in his consideration of Plaintiff's mental capacity. In short, it appears that the ALJ's decision is supported by substantial evidence, and that Plaintiff failed to satisfy his burden of establishing he met Listing 12.05(C). It is not for this Court to re-weigh the evidence.

## C.     RFC

Next, Plaintiff argues that the ALJ erred when he "concluded that Mr. Singer had the ability to stand for six hours out of an eight hour workday.  (Document No. 12-1, p.21) (citing Tr. 18). Plaintiff further argues that "[t]his finding is not supported by substantial evidence and is further contaminated by the ALJ apparently applying a 'sit and squirm test.'"  (Document No. 12-1, pp.21-22).  Plaintiff contends that the ALJ's observation that Plaintiff presented at the hearing "as a tall, heavy-set individual with no obvious physical limitations" was inappropriate.  (Document No. 12-1, p.22) (citing Tr. 21).

Plaintiff notes that he slipped on a wet floor in May 2006, and suffered an injury to his knee requiring surgery in July 2006.  (Document No. 12-1, p.22).  Plaintiff experienced continued pain in his knee through 2006-2007.  (Document No. 12-1, p.23).  "Still long before his disability application, on October 24, 2007, when Mr. Singer was seen at the Community Care Clinic he reported arthritis in his right knee."  (Document No. 12-1, p.24) (citing Tr. 525).  Plaintiff also contends that by 2009, he was unable to stand for extended periods or to walk more than a mile without limping.  Id. (citing Tr. 516, 651).

In response, Defendant contends that the ALJ properly considered all of the evidence, including Plaintiff's subjective  complaints of pain, and that the RFC finding regarding Plaintiff's ability to stand and walk is fully  supported by substantial evidence."  (Document No. 15, p.17). Specifically, Defendant argues that

> There is very limited evidence of knee or back pain during the relevant period.  At the time of the consultative exam in August 2009, x-rays of the right knee showed the prior ACL reconstruction and "some slight medial joint space narrowing," but no other abnormalities (Tr. 523), and x-rays of the lumbar spine showed some disk space loss at the L3-4 and L4-5 and other degenerative disc disease (Tr. 522).  On physical exam, there were no objective findings of physical abnormalities of his either his knees or spine,

17

although Plaintiff did have varicose veins on the right leg (Tr. 518). In November 2009, Plaintiff complained of lower back pain (with no mention of knee pain), but no objective findings were noted (Tr. 529). In February 2010, he reported lower back pain that worsened with standing and going up and down stairs, and right knee pain after walking for one mile (Tr. 795). On exam, he had some tenderness over his right sacroiliac joint and a normal neurological exam, with no reported findings related to his knees (Tr. 796). Primary care records from May 2010 through August 2010 show no complaints of knee or back pain (Tr. 791–94, 797). In September 2010, Plaintiff was noted to have "mild" varicose veins in his right leg, but no particular treatment was recommended (Tr. 819). Primary care records from May 2011 to June 2012 do not show any complaints of knee or back pain (Tr. 821–26, 830–32, 836–38).

Id.

As noted by Defendant, the ALJ's decision specifically discussed Plaintiff's knee problems. (Tr. 20-21). In particular, the ALJ observed "that despite reports of knee pain, there were not significant abnormalities observed during the consultative examination with Dr. Davis in 2009, including no difficulties with ambulation, moving about, or with use of the upper extremities," and that "several physical examinations from early 2009 through June 2012 did not show any markedly severe problems with physical maneuvers, or with prolonged walking, standing, or sitting." (Tr. 21) (citing Tr. 515-523).

Defendant also asserts that Plaintiff has not alleged any error on the ALJ's evaluation of credibility, other than to allege the ALJ engaged in a "sit and squirm test." (Document No. 15, p.19). Defendant contends that an ALJ is permitted to rely on his observations in assessing a claimant's credibility. Id. (citing Money v. Astrue, No. 5:09-CV-042-RLV-DSC, 2009 WL 7449241, at *6 (W.D.N.C. Dec. 9, 2009) affirmed, No. 5:09-CV-42, 2011 WL 666729 (W.D.N.C. Feb. 14, 2011); see also SSR 96-7p, 1996 WL 374186, at *8 (an ALJ "should consider any personal observations in the overall evaluation of the credibility of the individual's statements")).

Based on the foregoing, and further noting that Plaintiff's RFC accounts for "normal breaks," the undersigned is persuaded that the ALJ's RFC finding is supported by substantial evidence.

## D.    Prior Vacated Decision

Finally, Plaintiff asserts that "20 C.F.R. §404.953 requires that an ALJ issue a written decision that gives the findings of fact and the reasons for the decision, based upon the preponderance of the evidence offered at the hearing or otherwise included in the record." (Document No. 12-1, p.24).   Plaintiff contends that by incorporating in his decision "by reference" his "presentation of the objective medical evidence at the prior hearing," the ALJ failed to meet this responsibility.   Id.   In the decision now on appeal, the ALJ states:

> Since there is no dispute regarding the presentation of the objective medical  evidence as presented in the prior hearing decision issued on August 16, 2011, the  undersigned hereby has incorporated that evidence into this decision, **by  reference,** as though it were set forth in its entirety herein.  However, the undersigned will make reference to that prior evidence as deemed appropriate in  this decision (Exhibit 5A).

(Tr. 19) (emphasis in original).

Plaintiff argues that the ALJ's statement "there is no dispute regarding the presentation of the objective medical evidence as presented in the prior hearing decision. . . ," is inaccurate, and it was wrong for him to rely on his own decision as evidence when that decision was expressly vacated by the Appeals Council.  (Document No. 12-1, p.25) (citing Tr. 133).

Defendant notes that after  accepting new medical evidence into the record and holding a second  hearing in October 2012, at which Plaintiff amended his alleged onset date to  February 16, 2009, the ALJ issued a new decision that is now before the Court for  judicial review. (Document No. 15, p.20) (citing Tr. 11–24, 55-108, 468, 820-39).  Defendant argues that the

ALJ did issue a written decision that gives the finding of facts and reasons for the decision, and includes a full discussion of relevant medical evidence, even without any cross-reference to the prior decision. (Document No. 15, p. 21) (citing Tr. 11-24). Moreover, Defendant asserts that "Plaintiff cites no legal authority for the proposition that mere incorporation by reference of a previously vacated decision somehow means that new decision is legally or factually insufficient." Id. Defendant also argues that Plaintiff has cited no authority supporting the contention that the ALJ is required to explain the differences between the current decision and a prior vacated one. Id.

The undersigned is not persuaded that the ALJ committed error by referencing his prior decision. Instead, the current decision appears to be thorough, and supported by substantial evidence.

## E. __Mascio__ Implications

As noted above, the Court allowed the parties an opportunity to confer, and if necessary, to file supplemental briefs addressing any implications of __Mascio v. Colvin__, 780 F.3d 632 (4th Cir. 2015). (Document No. 16). The parties filed a "Status Report" (Document No. 18) on June 3, 2015, informing the Court that they agreed that __Mascio__ is implicated in this case, but disagreed as to whether __Mascio__ dictated remand.

Plaintiff contends in his "Supplemental Memorandum…" that the "ALJ here committed many of the same errors which led the Court of Appeals to direct a remand for new administrative proceedings" in __Mascio__.[5] (Document No. 19, p.1). Plaintiff argues that this case also requires remand. Id.

_____

[5] The Fourth Circuit identified three (3) errors in __Mascio__: (1) failing to conduct a function-by-function analysis; (2) ignoring (without explanation) moderate limitations in claimant's ability to maintain

## 1. Concentration, persistence, or pace . . .

First, Plaintiff asserts that the ALJ inadequately assessed his concentration deficiencies. (Document No. 19, p.2). Included in Plaintiff's synopsis of the evidence is the fact that two state agency psychologists agreed that Plaintiff had a "moderate" degree of limitation in his ability to maintain concentration, persistence, or pace. (Document No. 19, pp.3-4) (citing Tr. 469-71, 483, 495). Plaintiff then notes that here, just as in Mascio, the ALJ concluded that Plaintiff has moderate limitations with respect to concentration, persistence, or pace. (Document No. 19, p.4).

Plaintiff acknowledges that the ALJ recognized that he "could not 'maintain concentration and attention in a skilled, detailed, or complex work setting,'" and restricted him "to performing unskilled, simple routine, repetitive tasks, which requires only one, two, or three step instructions." Id. (citing Tr. 18). Nevertheless, Plaintiff now asserts that the ALJ "ignored" his moderate limitation in attention and concentration. (Document No. 19, p.5).

Defendant contends that the ALJ's "finding and hypothetical to the vocational expert accounted for Plaintiff's moderate difficulties in concentration, persistence, or pace." (Document No. 21, p.6). In support of its argument, Defendant notes that the ALJ's decision explains his reasons and the evidence he relied on for finding that Plaintiff had mental impairments resulting in moderate difficulties, as well as how he would account for these difficulties in his RFC finding:

> With regard to concentration, persistence, or pace, the claimant has moderate difficulties. The claimant has a poor past work history, and he did not complete high school. Intelligence testing revealed possible borderline intellectual functioning.
>
> The claimant remains unable to maintain concentration and attention in a skilled, detailed, or complex work setting. However, he has fairly adequate cognitive skills, and both independent mental examiners opined that the claimant could perform simple work

---

concentration, persistence, or pace; and (3) determining RFC before assessing credibility. Mascio, 780 F.3d at 633-34. Plaintiff does not appear to allege that the ALJ erred in the function-by-function analysis.

> activity on a sustained basis (Exhibits 13F, 20F) [Tr. 651–54, 806–09]. The claimant retains the mental capacity to maintain adequate concentration, persistence, and pace in an unskilled, simple, routine, repetitive work environment.

(Document No. 21, p.7) (quoting Tr. 18). In addition, Defendant observes that the corresponding hypothetical to the VE limited Plaintiff to "performing unskilled, simple, routine, repetitive tasks, which requires only one, two, or three step instructions." Id. (citing Tr. 18, 103-105). Defendant argues that "[h]ere, unlike in *Mascio*, the ALJ clearly articulated how Plaintiff's moderate difficulties in concentration, persistence, or pace translated into work-related limitations for purposes of the RFC finding." (Document No. 21, p.8).

The undersigned finds Defendant's arguments persuasive. Moreover, the undersigned observes that Mascio complained that "the hypothetical said nothing about Mascio's mental limitations." Mascio, 780 F.3d at 637-638. Here, the ALJ specifically noted for the VE's attention at the hearing, Plaintiff's "ongoing emotional problems, and his inability to concentrate for extended periods of time;" he also provided a hypothetical to the VE including that "due to that individual's **mental limitations**, they would require work which is simple and unskilled, which only requires one, two or three-step instructions." (Tr. 102-103) (emphasis added).

## 2. Credibility

Plaintiff also alleges that, just as in Mascio, "the ALJ wrongfully determined Mr. [Singer]'s RFC before assessing his credibility." (Document No. 19, p.5). Plaintiff then seems to simply argue, for the first time, that the ALJ's credibility finding was improper. Id.

Defendant acknowledges that the underlying ALJ decision includes boilerplate language disfavored by the Fourth and Seventh Circuits. (Document No. 21, p.12). However, Defendant also notes that the Fourth Circuit has explained that use of this boilerplate would be harmless error if the ALJ "properly analyzed credibility elsewhere." Id. (quoting Mascio, 780 F.3d at 639; citing

<u>Filus v. Astrue</u>, 694 F.3d 863, 868 (7th Cir. 2012)).  Defendant contends that "the ALJ did not simply rely on boilerplate language, but instead discussed substantial evidence to find Plaintiff's allegations less than fully credible."  (Document No. 21, p.3).  Defendant then makes specific references to its prior Memorandum and the ALJ decision.  <u>Id.</u> (citing Document No. 15, pp.4-11, 17-20;  Tr. 19-22).

Although probably not the model of clarity envisioned by the <u>Mascio</u> decision, the undersigned is persuaded that the credibility analysis in the underlying decision is adequate.  In particular, the undersigned notes there are several instances where the ALJ observed that Plaintiff's subjective complaints did not seem to fit the medical evidence and/or lack of treatment;  and that Plaintiff had difficulties with overuse of medication and apparent drug-seeking behavior.  <u>See</u> (Tr. 20-21).

Based on the foregoing, the undersigned will decline to recommend that the ALJ's alleged errors and/or the recent findings in <u>Mascio</u> require remand.

## IV.    CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971);  <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005).  As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V.    RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 12) be **DENIED**; "Defendant's

Motion For Summary Judgment" (Document No. 14) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI.    TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316;  Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003);  Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989);  Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.


Signed: December 3, 2015


David C. Keesler
United States Magistrate Judge