**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL ACTION NO.** 5:14-CV-00034-RLV-DCK

| | |
|---|---|
| LEO O. SINGER JR., | ) |
| **Plaintiffs,** | ) |
| v. | ) **ORDER** |
| CAROLYN W COLVIN, | ) |
| **Defendants.** | ) |

**BEFORE THE COURT** is Claimant Leo O. Singer, Jr.'s Objection to Magistrate Judge Keesler's Memorandum and Recommendation. (Doc. 23). The Memorandum and Recommendation (M&R) was filed December 4, 2015. (Doc. 22). The Objection was filed December 14, 2015. (Doc. 23). The Commissioner filed her Response December 23, 2015. (Doc. 25). The procedural history is more fully set forth in the M&R and is incorporated by reference.

The Federal Magistrate Act provides that a district court shall make a *de novo* determination of those portions of a magistrate judge's report or specific proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1) (2009); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2015) (quoting § 636(b)(1)). Nonetheless, this Court is responsible for the final determination and outcome, and accordingly the undersigned has conducted a careful review of the M&R as well as a *de novo* review of the specific matters raised in Claimant's Objection. Given that neither party objected to the standard of review espoused in the M&R, the Court incorporates it by reference. Additionally, this Court incorporates the recitation of facts set forth in the M&R and will discuss particular factual matters as appropriate in the body of the decision.

1

Claimant raises four specific objections. The first argues that remand is required by the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). The second states that the ALJ improperly treated the evidence regarding headaches. The third relates to the ALJ's consideration of Listing 12.05(C). The fourth states that the magistrate judge inappropriately recommended that the ALJ could perform a "sit and squirm" test. Given that the Court finds that the second objection is sustained, it will not discuss the other objections in any detail.

In Claimant's second objection, he maintains that "it is inconsistent and indefensible for the ALJ to conclude that an impairment, in this case migraine headaches, is a 'severe impairment' but simultaneously find that the condition creates no limitations in the claimant's RFC." *Id.* at 6. As an initial matter, the Court notes that the Claimant was diagnosed as having tension headaches. The Court also notes that the ALJ did not state that the headaches caused no functional restrictions, but rather failed to conclude what functional restrictions resulted from the headaches, including those that may or may not have resulted from treatment.

The ALJ classified Claimant's "Subjective Complaints of Migraine Headaches" as a severe impairment. Tr. 16.[1] Regarding headaches, the ALJ stated:

> treatment records from December 8, 2009, through February 15, 2012, reveal that the claimant was treated for subjective complaints of headaches on a very sporadic basis with Tramadol.[2] A CAT scan of the claimant's brain on March 10, 2010, was unremarkable. Progress notes dated August 2, 2011, reveal that the claimant was "doing well" with his medications, and had no side effects from his medications.

Tr. 20. The ALJ further addressed Claimant's headaches when stating that:

---

[1] The classification of Claimant's alleged headaches in this manner appears to be at odds with the step two analysis. *See* SSR 96-3 ("symptoms . . . will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence . . . that he . . . has a medically determinable physical or mental impairment."); SSR 96-4p ("In the absence of showing that there is a 'medically determinable physical or mental impairment,' an individual must be found not disabled at step 2.").

[2] Tramadol is an opiate (narcotic) analgesic used to relieve moderate to moderately severe pain. Tramadol, U.S. Nat'l Library Med., (Dec. 30, 2015) https://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html

2

> the undersigned notes that the claimant has reported frequent
> headaches (he testified at least two daily), but he had apparently
> not received any care from a neurologist, and there were no
> significant neurological abnormalities observed during any of the
> claimant's physical examinations.

Tr. 21; *see also* Tr. 123 (noting the same but that "occipital tenderness" was found on one occasion).

The ALJ also referenced Claimant's headaches when reporting that "claimant has apparently had difficulties with the overuse of his pain medication, and one of his physicians reported that he exhibited drug-seeking behavior." (Tr. 21).

The record reveals that Claimant was originally prescribed Tramadol but was switched to Fioricet for tension headaches.[3] (Tr. 826).

The Court finds that the ALJ provided reasoning sufficient to question Claimant's credibility regarding the severity of the headaches. What the ALJ did not do, however, is actually "[i]nclude a resolution of any inconsistencies in the evidence as a whole[,]" SSR 96-8p by indicating what impact Claimant's headaches have on his overall residual functional capacity. The ALJ's failure to "[s]et forth a logical explanation of the effects of the symptoms . . . on [Claimant's] ability to work", *see* SSR 96-8p, is an error that requires remand under this specific set of facts. *Sanders v. Astrue*, No. 11-CV-04428 LHK, 2013 WL 1334238, at *20 (N.D. Cal. Mar. 28, 2013) ([T]he Court cannot simply assume, in the absence of some statement by the ALJ, that Plaintiff's [severe impairment found at step two] had *no* limiting effects."); *Bergeron v. Astrue*, No. 09-CV-1219 MAD, 2011 WL 6255372, at *17 (N.D.N.Y. Dec. 14, 2011); SSR 96-7p (Once a medically determinable impairment has been established "the adjudicator [is

---

[3] Fioricet is a drug containing butalbital (a barbiturate), acetaminophen, and caffeine designed to treat tension headaches. *Fioricet*, U.S. Nat'l Library Med., (Dec. 30, 2015), http://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=c018be7d-f7b8-45e2-97b8-8e7a71740657.

required] to make a finding about the credibility of the individual's statements about the symptoms(s) **and its functional effects**.").

This error was hinted at in the first Appeals Council decision remanding the case to the ALJ. Tr. 134 (stating that "upon remand the [ALJ] will . . . [g]ive further consideration to the claimant's maximum [RFC] and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations.") (citing 20 C.F.R. 404.1415, 416.945 and SSR 96-8p). It is apparent that the ALJ found that Claimant's allegations at the very least incredible regarding the severity of his headaches and their impact. However, upon review, the Court cannot determine whether "the ALJ found [his] claim of [pain] partially or completely incredible[,]" *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015), particularly where the Claimant has a history of headache complaints that, at one point, were treated by narcotics and are currently being treated by a medication containing barbiturates.[4] Contrary to Defendant's argument, it is not apparent on review whether or not the ALJ included the restriction for avoiding "concentrated exposure to unprotected heights [and] moving machinery" to account for the allegations of headaches (or rather, the treatment of the headaches) given that, at the hearing, the Claimant testified that no employer would let him climb ladders due to his lack of equilibrium. Tr. 93. Further, it is apparent that the ALJ did not consider the non-exertional impact that the headaches could cause on Claimant's mental abilities, because he specifically stated that the mental limitations derived from memory problems and the results from the IQ testing. Tr. 22.

---

[4] SSR 96-8p states that "[t]he RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments." In this case, the Court cannot divine whether the RFC includes functional limitations that *result from* the medically determinable impairment of headaches because of the deficiency in explanation. The analysis does not identify "the extent to which [Claimant's] [headaches] may cause physical or mental limitations or restrictions." *Id.*

4

On remand, the ALJ is instructed to specify what limitations, if any, result from Claimant's headaches. The Court does not express an opinion regarding whether any additional limitations should be added.

Given the above error of law, the Court need not engage in a lengthy discussion regarding other arguments made. However, in order to assist the administrative process, the Court instructs the ALJ to evaluate Listing 12.05(C) in the three prong manner required by *Hancock v. Astrue*, 667 F.3d 470, 473 (4th Cir. 2012). *See Mascio*, 780 F.3d 632, 637 n.6 (finding reversible error but noting that "it [was] appropriate to address . . . other alleged errors because they could recur on remand."). At Prong 2 the ALJ should not omit Claimant's verbal IQ score of 70. The Court also instructs the ALJ to explain his findings regarding adaptive functioning. "[A]daptive functioning refers to how effectively an individual copes with common life demands and how well [he] meets the standards of personal independence expected of someone in [his] particular age group, sociocultural background, and community setting." *Salmons v. Astrue*, No. 5:10CV195-RLV, 2012 WL 1884485, at *2 (W.D.N.C. May 23, 2012) (Voorhees, J.) (quoting *Caldwell v. Astrue,* 2011 WL 4945959, *3 (W.D.N.C. October 18, 2011) (quoting *Diagnostic and Statistical Manual of Mental Disorders* (DSM) 41 (4th ed. text rev. 2007)).[5] On remand, the ALJ should weigh Claimant's homelessness and poor academic record in conjunction with the findings made by the consultative psychological examiner. In the RFC analysis, the ALJ should not utilize the boilerplate prohibited by *Mascio*. Finally, a function-by-function analysis should be performed as required by *Mascio* and SSR 96-8p.

---

[5] "The federal regulations explicitly allow the Social Security Administration to rely on the DSM, and other professional standard measures, such as the Vineland Adaptive Behavior Scales or the American Association on Mental Retardation Adaptive Behavior Scale, in assessing a claimant's adaptive functioning." *Salmons v. Astrue*, No. 5:10CV195-RLV, 2012 WL 1884485, at *2 (W.D.N.C. May 23, 2012).

**IT IS, THEREFORE, ORDERED THAT**

(1) Claimant's Objection is **SUSTAINED**;

(2) Claimant's Motion for Summary Judgment is **GRANTED** insofar as it seeks remand;

(3) Defendant's Motion for Summary Judgment is **DENIED**; and

(4) The case is remanded under sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this opinion.

Signed: January 20, 2016

Richard L. Voorhees
United States District Judge